# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.W.-1 and A.S.**

**No. 19-0923** (Randolph County 18-JA-159 and 18-JA-160)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.W.-2, by counsel Timothy H. Prentice, appeals the Circuit Court of Randolph County's September 11, 2019, order terminating her parental rights to C.W.-1 and A.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melissa T. Roman, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period or employing a less-restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed a child abuse and neglect petition against the mother and her boyfriend, alleging that they abused drugs in the home. Specifically, the DHHR alleged that it received a referral wherein the reporter claimed that petitioner abused drugs, slurred her words, stumbled, rambled, and made no sense when she spoke. A Child Protective Services ("CPS") worker interviewed A.S., who disclosed that petitioner "sleeps a lot" and "take[s] pills." A.S. also disclosed observing C.W.-1's father "hit her [petitioner], yell in her face, and say bad words to her." After speaking with A.S., the CPS worker proceeded to petitioner's home. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as C.W.-1 and C.W.-2, respectively, throughout this memorandum decision.

1

worker believed petitioner to be under the influence of drugs as she was very nervous, shaking, stumbling around the home, slurring her words, and struggling to form complete sentences. Law enforcement officers aided the CPS worker in removing the children from the home. One officer observed "marijuana wax" in the home and, after performing a search, found methamphetamine and Klonopin. The boyfriend admitted trading Suboxone for methamphetamine and other drugs. When asked whether she was aware of drug trafficking going on in the home, petitioner stated, "I'm not sure." Thereafter, the DHHR instructed petitioner to submit to a drug screen, but she failed to do so. In sum, the DHHR alleged that petitioner was unable to protect the children due to her pervasive drug use, which rendered her unable to adequately supervise the children and ensure that their needs were met.

In February of 2019, the DHHR filed an amended petition after the children made additional disclosures of petitioner's drug abuse during a forensic interview. A.S. reported observing petitioner "put stuff up [her] nose with a red straw." A.S. stated that the "stuff" was white and that petitioner chopped up the substance with a credit card. Also, ten-year-old A.S. reported that she had to take care of C.W.-1 and do things such as prepare food, clean the house, and do laundry.

At an adjudicatory hearing held in March of 2019, petitioner stipulated to abusing drugs and engaging in domestic violence. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. In May of 2019, the circuit court held a dispositional hearing wherein it was advised that supervised visitation between petitioner and the children had been suspended after petitioner produced several diluted drug screens. Petitioner requested a continuance of the dispositional hearing on the basis that she recently entered and completed a seven-day detoxification program at a facility in Clarksburg, West Virginia. The circuit court granted a continuance in order to provide petitioner the opportunity to obtain documentation that she had, in fact, completed the detoxification program. The circuit court also ordered petitioner to submit to a drug screen following the hearing. The results were positive for buprenorphine, a controlled substance for which petitioner did not have a prescription.

The dispositional hearing was continued once more at petitioner's request, as she had to attend a medical appointment regarding an upcoming surgery. The circuit court granted the continuance and instructed petitioner to provide documentation of her medical appointment. In July of 2019, the guardian filed a report indicating that petitioner continued to test positive for drugs throughout the proceedings and ceased submitting to screens entirely in May of 2019. The guardian opined that despite petitioner's severe drug addiction, she had done nothing to address the same. The guardian recommended termination of petitioner's parental rights.

In August of 2019, the circuit court held a dispositional hearing. The DHHR presented the testimony of a Community Corrections worker who testified that petitioner tested positive for a myriad of substances throughout the proceedings, including methamphetamine, benzodiazepine, and oxycodone. According to a service provider, petitioner was not consistent in participating in parenting and adult life skills classes and missed or attempted to reschedule several sessions. The service provider also testified that supervised visits were suspended based upon petitioner's failure to submit negative drug screens or provide proof of prescriptions. A DHHR worker testified that the facility at which petitioner claimed to have attended a detoxification program did not, in fact,

provide such services. The DHHR worker also testified that petitioner missed three drug screens in February of 2019, five screens in March of 2019, three screens in April of 2019, five screens in May of 2019, and five screens in June of 2019.

Petitioner testified in support of her motion for an improvement period, stating that she "did the call ins every day. I checked in every day for months." Petitioner claimed that she complied with what was required of her and "then out of no where [sic] . . . I wasn't allowed to see my kids anymore." Petitioner also claimed that she had a substance abuse problem "up until a few months ago," but no longer had issues after attending counseling and obtaining Vivitrol shots.[2] She conceded that she did not submit to drug screens after prior hearings as directed by the circuit court. Nevertheless, petitioner maintained that she would fully comply with the terms and conditions of an improvement period.

The circuit court verified that petitioner failed to provide documentation to support her claims that she attended a detoxification program, received the Vivitrol shot as part of her detoxification program, or was absent from the previous hearing due to treatment for a medical problem. Further, the circuit court ordered petitioner to submit a drug screen, which revealed that she tested positive for methamphetamine. Ultimately, the circuit court denied petitioner's motion for a post-adjudicatory improvement period. The circuit court found that petitioner "had nine months to demonstrate that [she] will participate in an improvement period and [she] can't even comply with [the] court's order to walk across the street after hearings and screen." The circuit court also found that the DHHR provided petitioner with several opportunities, but she rejected those opportunities and blamed the DHHR for her failures. The circuit court found that petitioner was presently unwilling or unable to adequately provide for the children's needs. Further, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Petitioner appeals the circuit court's September 11, 2019, dispositional order terminating her parental rights.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

---

[2]Vivitrol "is a nonaddictive, once-monthly treatment for opioid and alcohol dependence. It is an antagonist medication that blocks opioid receptors in the brain for one month at a time, helping patients to prevent relapse to opioid dependence, following detox, and fight alcohol dependence while they focus on counseling." Vivitrol, *Help Reinforce Your Recovery*, https://www.vivitrol.com/content/pdfs/integrated-patient-brochure.pdf.

[3]The respective fathers' parental rights were also terminated below. The permanency plan for the children is adoption by A.S.'s paternal grandfather.

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-adjudicatory improvement period.[4] Petitioner contends that her testimony demonstrates she was likely to fully participate in an improvement period. Moreover, petitioner contends that, despite the fact that the children "have expressed a desire not to return to live with [her], they remain bonded." We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for an improvement period. The overwhelming evidence set forth below demonstrates that petitioner failed to comply with the requirement that she consistently submit to drug screens. Testimony at the dispositional hearing indicated that she missed numerous screens. In fact, petitioner missed twenty-one drug screens between February of 2019 and June of 2019. Petitioner also tested positive for controlled substances and illicit drugs nearly thirty times between January of 2019 and the dispositional hearing held in August of 2019. Incredibly, petitioner testified that she no longer had a substance abuse issue despite testing positive for methamphetamine during the dispositional hearing. Moreover, petitioner blamed the DHHR for her lack of participation and stated she did not understand why her supervised visits with the children were terminated. We have previously held that failure to acknowledge the issues of abuse and neglect render an

---

[4]Petitioner briefly states that the circuit court failed to consider guardianship with some of her relatives who were fit, able, and willing to take the children and that the DHHR's staffing issues precluded her from obtaining an improvement period. However, petitioner fails to cite to any portion of the record demonstrating that she has relatives who desired placement of the children, that the circuit court refused to consider them, or that the DHHR was experiencing staffing issues that prevented her from participating in services. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we decline to address these issues on appeal.

improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's continued substance abuse and failure to accept responsibility for her actions, we find no error in the circuit court's denial of her motion for an improvement period.

The evidence as set forth above also demonstrates that the circuit court did not err in terminating petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) (2019)[5] provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of neglect in the near future. As shown above, petitioner failed to participate in court-ordered drug screens, tested positive for a myriad of controlled substances and illicit drugs during the proceedings, and blamed the DHHR for her failure to participate. Further, petitioner failed to participate in supervised visitation with the children, as well as parenting and adult life skills classes. Additionally, petitioner lied about her participation in a detoxification program and failed to produce documentation to support several claims she made throughout the proceedings. While petitioner claims she should have been granted a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the children's welfare. We find that the circuit court's findings are fully supported by the record below and, therefore, find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 11, 2019, order is hereby affirmed.

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Affirmed.

**ISSUED**: June 24, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison